IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| NEAL ALVIN POWELL,<br>Plaintiff, | )<br>) Civil Action No. 15-3Erie<br>) |
| v. | )<br>) |
| R.N. TRISHA WRIGHT, et al,<br>Defendants. | )<br>) Magistrate Judge Baxter<br>) |

## MEMORANDUM OPINION[1]

M.J. Susan Paradise Baxter

### I. Relevant Procedural History

Plaintiff, a federal inmate acting *pro se*, initiated this civil rights action on January 7, 2015. The complaint alleges violation of Plaintiff's Eighth Amendment rights pursuant to Bivens v. Six Unknown Fed. Narcotics Agents, 403 U.S. 388 (1971). Individuals named as Defendants are: R.N. Trisha Wright, P.A. Eric Asp, and P.A. Diane Kengersky.

Presently before this Court is Defendants' motion to dismiss or alternatively, for summary judgment. ECF No. 32. Plaintiff has filed a brief in opposition. ECF No. 37. This motion is ripe for consideration by this Court.

### II. The Allegations of the Second Amended Complaint

Plaintiff alleges that between May 29, 2014 and June 3, 2014, he was subjected to inadequate medical treatment while he was incarcerated at the FCI McKean. ECF No. 26. On

---

[1] In accordance with the provisions of 28 U.S.C. § 636(c)(1), the parties have voluntarily consented to have a United States Magistrate Judge conduct proceedings in this case, including the entry of a final judgment.

1

May 29th, Plaintiff was seen at sick call by Defendant Wright, a registered nurse, who discovered two abrasions to Plaintiff's left eye. Plaintiff returned to sick call the following day complaining of an increase in pain in a different part of his eye as well as decreased vision. Plaintiff alleges Defendant Wright refused to see him and denied him pain medications.

Plaintiff alleges that he returned to sick call later and spoke to Defendant Kengersky, a Physician's Assistant, about his medical complaints. Defendant Kengersky also refused to provide medical attention or pain medication.

Plaintiff alleges he was examined by Defendant Asp, a Physician's Assistant, on June 2, 2014. Defendant Asp diagnosed Plaintiff with one abrasion, despite the fact that Plaintiff had been diagnosed with two abrasions just days earlier.

On June 3, 2014, Plaintiff returned to the Health Services Unit where an unnamed Physician's Assistant determined that Plaintiff needed to be seen by an outside Ophthalmologist. During that outside examination, Plaintiff was diagnosed with shingles after several lesions in the eye were discovered. Plaintiff claims that he suffers from chronic pain due to the nerve damage to his eye. Plaintiff seeks monetary relief from Defendants Wright, Asp, and Kengersky.

### III. Standards of Review

#### A. *Pro Se* Litigants

*Pro se* pleadings, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers." Haines v. Kerner, 404 U.S. 519, 520-521 (1972). If the court can reasonably read pleadings to state a valid claim on which the litigant could prevail, it should do so despite failure to cite proper legal authority, confusion of legal theories, poor syntax and sentence construction, or litigant's unfamiliarity with pleading requirements. Boag v.

MacDougall, 454 U.S. 364 (1982); United States ex rel. Montgomery v. Bierley, 141 F.2d 552, 555 (3d Cir. 1969)(petition prepared by a prisoner may be inartfully drawn and should be read "with a measure of tolerance"); Smith v. U.S. District Court, 956 F.2d 295 (D.C.Cir. 1992); Freeman v. Dep't of Corrections, 949 F.2d 360 (10th Cir. 1991). Under our liberal pleading rules, during the initial stages of litigation, a district court should construe all allegations in a complaint in favor of the complainant. Gibbs v. Roman, 116 F.3d 83 (3d Cir. 1997). See, e.g., Nami v. Fauver, 82 F.3d 63, 65 (3d Cir. 1996)(discussing Fed.R.Civ.P. 12(b)(6) standard); Markowitz v. Northeast Land Co., 906 F.2d 100, 103 (3d Cir. 1990)(same). Because Plaintiff is a *pro se* litigant, this Court may consider facts and make inferences where it is appropriate.

### B. Motion to Dismiss pursuant to Federal Rule 12(b)(6)

A motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6) must be viewed in the light most favorable to the plaintiff and all the well-pleaded allegations of the complaint must be accepted as true. Erickson v. Pardus, 551 U.S. 89, 93-94 (2007). A complaint must be dismissed pursuant to Rule 12 (b)(6) if it does not allege "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570. See also Ashcroft v. Iqbal, 556 U.S. 662 (2009) (specifically applying Twombly analysis beyond the context of the Sherman Act).

A Court need not accept inferences drawn by a plaintiff if they are unsupported by the facts as set forth in the complaint. See California Pub. Employee Ret. Sys. v. The Chubb Corp., 394 F.3d 126, 143 (3d Cir. 2004) citing Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997). Nor must the Court accept legal conclusions set forth as factual allegations. Twombly, 550 U.S. at 555, citing Papasan v. Allain, 478 U.S. 265, 286 (1986). See also

McTernan v. City of York, Pennsylvania, 577 F.3d 521, 531 (3d Cir. 2009) ("The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."). A plaintiff's factual allegations "must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 556, citing 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235-236 (3d ed. 2004). Although the United States Supreme Court does "not require heightened fact pleading of specifics, [the Court does require] enough facts to state a claim to relief that is plausible on its face." Id. at 570.

In other words, at the motion to dismiss stage, a plaintiff is "required to make a 'showing' rather than a blanket assertion of an entitlement to relief." Smith v. Sullivan, 2008 WL 482469, at *1 (D. Del.) quoting Phillips v. County of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008). "This 'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element." Phillips, 515 F.3d at 234, quoting Twombly, 550 U.S. at 556 n.3.

The Third Circuit has expounded on the Twombly/Iqbal line of cases:

> To determine the sufficiency of a complaint under Twombly and Iqbal, we must take the following three steps:
>
> First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.' Second, the court should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.' Finally, 'where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.'

Burtch v. Milberg Factors, Inc., 662 F.3d 212, 221 (3d Cir. 2011) quoting Santiago v. Warminster Twp., 629 F.3d 121, 130 (3d Cir. 2010).

### C. Motion for Summary Judgment

Both parties have submitted exhibits in support of their respective positions. Therefore, this Court will convert the motion to dismiss pursuant to Federal Rule of Civil Procedure

4

12(b)(6) to a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56. See Burns v. Harris County Bail Bond Bd., 139 F.3d 513, 517 (5th Cir.1998). ("When matters outside the pleadings are presented to and not excluded by the district court, the district court must convert a motion to dismiss into a motion for summary judgment."); Greer v. Smith, 2003 WL 1090708, *1 (3d Cir. (Pa.) March 10, 2003) ("the District Court considered material outside of the pleadings and, therefore, should have converted the motion for dismissal to a summary judgment motion, allowing the plaintiff an opportunity for appropriate discovery and a reasonable opportunity to present all material made pertinent to the motion.").

Federal Rule of Civil Procedure 56(a) provides that summary judgment shall be granted if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." When applying this standard, the court must examine the factual record and reasonable inferences therefrom in the light most favorable to the party opposing summary judgment. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

The moving party has the initial burden of proving to the district court the absence of evidence supporting the non-moving party's claims. Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986); Andreoli v. Gates, 482 F.3d 641, 647 (3d Cir. 2007); UPMC Health System v. Metropolitan Life Ins. Co., 391 F.3d 497, 502 (3d Cir. 2004). The burden then shifts to the non-movant to come forward with specific facts showing a genuine issue for trial. Fed. R. Civ. P. 56(e); Williams v. Borough of West Chester, Pa., 891 F.2d 458, 460-461 (3d Cir. 1989)(the non-movant must present affirmative evidence - more than a scintilla but less than a preponderance - which supports each element of his claim to defeat a properly presented motion for summary judgment). The non-moving party must go beyond the pleadings and show specific facts by

affidavit or by information contained in the filed documents (i.e., depositions, answers to interrogatories and admissions) to meet his burden of proving elements essential to his claim. Celotex, 477 U.S. at 322. See also Saldana v. Kmart Corp., 260 F.3d 228, 232 (3d Cir. 2001).

When considering a motion for summary judgment, the court is not permitted to weigh the evidence or to make credibility determinations, but is limited to deciding whether there are any disputed issues and, if there are, whether they are both genuine and material. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).

## IV. The Prison Litigation Reform Act

### A. The Exhaustion Requirement

Defendants argue that they are entitled to dismissal or summary judgment based on Plaintiff's failure to exhaust his administrative remedies in accordance with the requirement of the Prison Litigation Reform Act. The PLRA, 42 U.S.C. § 1997e(a) provides:

> no action shall be brought with respect to prison conditions under section 1983 of this title ... by a prisoner confined in any jail, prisons, or other correctional facility until such administrative remedies as are available are exhausted.

Id. It is not a plaintiff's burden to affirmatively plead exhaustion. Jones v. Bock, 549 U.S. 199, 217 (2007) ("...failure to exhaust is an affirmative defense under the PLRA, and that inmates are not required to specially plead or demonstrate exhaustion in their complaints."). Instead, the failure to exhaust must be asserted and proven by the defendants. Ray v. Kertes, 285 F.3d 287, 295 (3d Cir. 2002).

The requirement that an inmate exhaust administrative remedies applies to all inmate suits regarding prison life, including those that involve general circumstances as well as particular episodes. Porter v. Nussle, 534 U.S. 516 (2002); Cutter v. Wilkinson, 544 U.S. 709,

6

723 n.12 (2005) (noting that the PLRA requires that "a prisoner may not sue under RLUIPA without first exhausting all available administrative remedies."); Concepcion v. Morton, 306 F.3d 1347 (3d Cir. 2002) (for history of exhaustion requirement). Administrative exhaustion must be completed prior to the filing of an action. McCarthy v. Madigan, 503 U.S. 140, 144 (1992). Federal courts are barred from hearing a claim if a plaintiff has failed to exhaust all the available remedies. Grimsley v. Rodriquez, 113 F.3d 1246 (Table), 1997 WL 2356136 (Unpublished Opinion) (10th Cir. May 8, 1997).[2] The exhaustion requirement is not a technicality, rather it is federal law which federal district courts are required to follow. Nyhuis v. Reno, 204 F.3d 65, 73 (3d Cir. 2000) (by using language "no action shall be brought," Congress has "clearly required exhaustion").[3]

The PLRA also requires "proper exhaustion" meaning that a prisoner must complete the administrative review process in accordance with the applicable procedural rules of that grievance system. Woodford v. Ngo, 548 U.S. 81, 87-91 (2006) ("Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules ..."). Importantly, the exhaustion requirement may not be satisfied "by filing an untimely or otherwise procedurally defective ... appeal." Id. at 83; see also Spruill v. Gillis, 372 F.3d 218, 228-29 (3d Cir. 2004) (utilizing a procedural default analysis to reach the same conclusion) (" Based on our earlier

---

[2] Importantly, a plaintiff's failure to exhaust his administrative remedies does not deprive the district court of subject matter jurisdiction. Nyhuis v. Reno, 204 F.3d 65, 69 n.4 (3d Cir. 2000) ("...[W]e agree with the clear majority of courts that §1997e(a) is *not* a jurisdictional requirement, such that failure to comply with the section would deprive federal courts of subject matter jurisdiction.").

[3] There is no "futility" exception to the administrative exhaustion requirement. Banks v. Roberts, 2007 WL 3096585, at * 1 (3d Cir.) citing Nyhuis, 204 F.3d at 71 ("[Plaintiff's] argument fails under this Court's bright line rule that 'completely precludes a futility exception to the PLRA's mandatory exhaustion requirement.'"). See also Woodford v. Ngo, 548 U.S. 81, 85 (2006) ("Indeed, as we held in *Booth*, a prisoner must now exhaust administrative remedies even where the relief sought-monetary damages-cannot be granted by the administrative process.").

7

discussion of the PLRA's legislative history, [...] Congress seems to have had three interrelated objectives relevant to our inquiry here: (1) to return control of the inmate grievance process to prison administrators; (2) to encourage development of an administrative record, and perhaps settlements, within the inmate grievance process; and (3) to reduce the burden on the federal courts by erecting barriers to frivolous prisoner lawsuits.").

So then, no analysis of exhaustion may be made absent an understanding of the administrative process available to state inmates. "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.' The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." Jones v. Bock, 549 U.S. at 218. See also Spruill, 372 F.3d at 231 (having concluded that the PLRA includes a procedural default component, the Court then indicated that "prison grievance procedures supply the yardstick for measuring procedural default.").

### B. The Administrative Process Available to Federal Inmates

Under the Bureau of Prisons' regulations, an inmate must first attempt to informally resolve any dispute with institution staff. 28 C.F.R. § 542.13. If informal resolution fails, the inmate may raise his complaint to the Warden of the institution in which he is confined, within twenty calendar days of the date that the basis of the complaint occurred. 28 C.F.R. § § 542.13, 542.14. If the Warden denies the administrative remedy request, the inmate may file an appeal with the Regional Director within twenty days of the date of the Warden's response. 28 C.F.R. § § 542.14, 542.15. If the Regional Director denies the appeal, the inmate may appeal that decision

to the General Counsel for the Federal Bureau of Prisons within thirty calendar days from the date of the Regional Director's response. Id.

Additionally, Bureau of Prisons' regulations permit inmates to submit sensitive issues to bypass seeking administrative relief at the institutional level and access the Administrative Remedy Process by filing a Regional Appeal directly to the appropriate Bureau of Prisons' Regional Office. 28 C.F.R. § 542.14(d)(1). The regulations specifically provide that if an inmate reasonably believes the issue is sensitive and his safety or well-being would be placed in danger if the Request became known at the institution, the inmate may submit his Administrative Remedy Request to the Regional Director. Id. The regulation requires that the inmate explain the reason for not submitting the Request through the normal channel. Id. If the Regional Administrative Remedy Coordinator agrees the request is sensitive, the Request must be accepted. Otherwise, the Request will not be accepted, and the inmate will be informed that his request was not deemed to raise a "sensitive" issue. Id. Administrative Remedy requests that are deemed to be not sufficiently sensitive are maintained in the receiving Regional Office. After a Request is rejected by the Regional Office because it was determined no sensitive issue had been raised, the inmate may pursue the issue by submitting an Administrative Remedy Request at the institutional level. The Warden must allow a reasonable extension of time for such a re-submission. Id.

### C. Evidence of Plaintiff's use of the administrative remedy process

Plaintiff's Admission-Release History reflects that he was transferred from FCI McKean

9

on June 19, 2014, which was during the 20 day grievance filing period for incidents alleged to have occurred between May 30 and June 3, 2014. ECF No. 33-2, pages 18-19. Plaintiff arrived at FCI Allenwood, his next designated facility, on July 10, 2014. Id.

After arriving at FCI Allenwood, on July 31, 2014, Plaintiff filed a Request for Administrative Remedy with the Warden there, grieving events involving a missing pair of prescription eye glasses. On August 22, 2014, the Administrative Remedy Request was withdrawn. ECF No. 33-1, page 4.

On November 14, 2014, Plaintiff attempted to submit a "sensitive" issue request complaining of the events that transpired on May 30th with Nurse Trisha Wright.[4] ECF No. 33-4, pages 2-3 (Case Number 801769-R1). On November 19, 2014, the Administrative Remedy Coordinator rejected Plaintiff's "sensitive" issue request for two reasons: first, the issue raised was not "sensitive" and second, no BP-9 had been filed at the institution level. The rejection notice informed Plaintiff that he "should file a request or appeal at the appropriate level via regular procedures." Id. Plaintiff did not pursue this appeal any further.

On December 4, 2014, Plaintiff filed a Request for Administrative Remedy at FCI Allenwood, complaining about R.N. Wright's treatment of him on May 30th and specifically requesting monetary relief.[5] ECF No. 37, page 10 (Case Number 803690-F1). Plaintiff's Administrative Remedy for rejected for three reasons: first, because of its untimeliness; second,

---

[4] Plaintiff's grievance reads, in its entirety: "On 5/30/2014 I went to sick call to follow up, and report new and worse conditions of a medical issue. Nurse Trisha Wright at FCI McKean ("It resulted in nerve damage on 6/1/2014") refused to look at my complaint and argued with me that I were [sic] exaggerating and forced me to leave. My constitutional rights were violated and I am suffering chronic pain in my eye due to her negligence." ECF No. 33-4, page 3.
[5] Plaintiff's grievance reads, in its entirety: "R.N. Trisha Wright refused to give me attention at sick call on 5/30 and the result is a chronic nerve pain a continueing [sic] violation of inflicted unnecessary and wanton pain clause of my 8th amendment constitution rights. I am seeking monetary relief, this deliberate indifference to my needs occurred 5/30/2014." ECF No. 37, page 10.

because it was filed at the wrong level; and, third, because a request for monetary relief must be filed on a tort claim. Id. at 12. Plaintiff did not appeal this decision, but did file two Administrative Tort Claims for monetary relief. ECF No. 33-3, pages 1-20.

The evidence demonstrates that Plaintiff has failed to properly exhaust the administrative remedy process as to his claims against Defendant Wright and that Plaintiff has not even attempted to exhaust any claims involving Defendants Asp and Kengersky.

Plantiff has not produced any evidence to the contrary, as he must do in order to survive a well-supported motion for summary judgment. Celotex. Instead, Plaintiff makes two arguments as to why his failure to exhaust should be excused. First, Plaintiff argues that prison transfers prevented him from filing. ECF No. 37, page 2. However, Plaintiff has not produced any evidence that Plaintiff's transfer to Allenwood prevented him from filing a grievance. Indeed, the evidence reflects that shortly after arriving at Allenwood, Plaintiff filed a grievance related to another issue. Plaintiff's argument is further undermined in that he could have filed his grievance after 801769-R1 was rejected as sensitive. The rejection notice specifically states that Plaintiff "should file a request or appeal at the appropriate level via regular procedures" (see ECF No. 33-4, pages 2-3) and the Bureau of Prisons regulations require that a reasonable extension of time be given for the resubmission. See 28 C.F.R. § 542.14.

Next, Plaintiff argues that "chronic pain has no time limitation." ECF No. 37, page 2. Plaintiff provides no case law in support of this contention and even if he could, it does not support his position in this case. Here, Plaintiff's legal claim is based upon a discreet series of events that occurred in late May and early June of 2014. Chronic pain as a result of those events does not excuse Plaintiff's failure to exhaust his administrative remedies.

To the extent that Plaintiff may claim that his FTCA claims satisfy the exhaustion requirement of the PLRA, such an argument lacks merit. The case law clearly establishes that the PLRA's exhaustion requirement is not met by exhausting an FTCA claim. Ramos v. Hawk-Sawyer, 212 Fed.App'x 77, 79 (3d Cir. 2006) (administrative tort claim filed by federal inmate did not satisfy administrative exhaustion requirement of PLRA for *Bivens* claims against prison officials).

Accordingly, summary judgment will be granted in favor of Defendants.

An appropriate Order follows.

/s/ Susan Paradise Baxter
SUSAN PARADISE BAXTER
United States Magistrate Judge